CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
JAN - 3 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT L. BROWN, JR., ) | |
| Plaintiff, ) | Civil Action No. 7:07cv00574 |
| ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| MR. JARED BAKER, <u>et al.</u>, ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Plaintiff Robert L. Brown, Jr., an inmate at Red Onion State Prison in Pound, Virginia, brings this <u>pro se</u> action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that defendants, employees at Keen Mountain Correction Center ("KMCC") in Oakwood, Virginia, violated his constitutional rights by failing to check his blood pressure and temperature prior to placing him in a strip cell for psychological observation and by failing to diagnose a fractured rib. Plaintiff seeks damages in excess of $1,500,000.00. Upon review of the complaint, I find that plaintiff fails to state a claim upon which the court may grant relief. Therefore, I shall dismiss the suit pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I. FACTUAL BACKGROUND[2]

Plaintiff states that he was transferred to KMCC in May of 2005 and that, on December 12, 2005, he "put in a Request form to see a Psychologist about some problems." Subsequently, on December 13, 2005, plaintiff was examined and then was placed in a strip cell. According to plaintiff, he fell while he was held in the strip cell, striking his side on the toilet as he fell and fracturing his left ninth rib.

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

[2] The facts have been adduced from plaintiff's complaint and the documents submitted in support thereof.

Plaintiff's documentation of his attempts to exhaust all available administrative remedies indicates that, on January 30, 2006, plaintiff filed a grievance concerning the alleged fall in the strip cell.[3] On February 9, 2006, the Warden at KMCC issued her Level I response to plaintiff's grievance. The Level I response states, verbatim:

> In your grievance you state on December 13, 2005 you sent a request to Medical to see the doctor regarding your left side because, you injured it when you fell in C-201 on the toilet, you state you saw the nurse when this incident occurred. You go on to state you saw the nurse again on December 22, 2005, at which time you were given Medication for five (5) days. You feel you have a fractured rib; you would like to receive medication for your pain.
>
> Attached to your grievance is an informal complaint dated January 19, 2006, by M. Gilbert, RNCB, stating "The doctor evaluated you yesterday and has ordered a chest x-ray and blood work. You have a follow-up scheduled in one (1) month." Also attached are various informal requests to medical.
>
> Investigation reveals you were placed on 15-minute watched by Psychology, **nursing staff did evaluate you on December 13, 2005 per orders from Psychology**, however, there were **no signs of injury noted at that time**. You then **signed up at sick call on January 13, 2006 with a complaint that you felt you had "a knot deep inside"** and it might be serious. You **denied any pain on January 13, 2006** to Nurse Lester. You were **referred to the doctor and evaluated on January 18, 2006, at that time, the doctor ordered an x-ray and blood work. You are also scheduled for a follow-up in one (1) month. During your evaluated by the doctor you never stated this was from a fall in your cell**.
>
> DOP 702-7.0 states the Health Authority is responsible for providing or arranging all levels of medical care and for ensuring that quality medical services are provided to inmates. The physician who is in charge of your care makes the decision as to the best medicine *best treatment for your condition. IOP 718-6.0 defines sick call as "Care for an **ambulatory inmate with health care requests** which are evaluated and treated in a clinic setting. It is the system through which each inmate reports for and

---

[3] This grievance and subsequent appeal bear the log number 260-09439. Additionally, plaintiff has submitted a statement, also dated January 30, 2006, from R. Sandifer, a prison official, stating that, on that date, Sandifer "received a statement from [plaintiff]" that stated "the following complaint: <u>Claims he fell out of bed and needs to see doctor.</u>" On February 1, 2006, plaintiff submitted an Informal Complaint Form disputing the contents of Sandifer's statement, which resulted in a second statement from Sandifer, also dated January 30, 2006, stating "the following complaint: <u>Inmate fell in cell C-201 on toilet and past [sic] out/needs to see doctor[.]</u>"

2

> receives appropriate health services for non-emergency illness or injury." Per IOP 720-7.1, the Medical Staff at KMCC are responsible for rendering emergency and routine care to inmates and making appropriate referrals if needed. Records show you have been treated appropriately and **have not been denied medical treatment.**

(Emphasis added; otherwise verbatim.)

Plaintiff appealed, challenging the decision on the basis that placing him in the strip without first checking his blood pressure and taking his temperature was negligence. On February 23, 2006, the Health Services Director for the Virginia Department of Corrections ("VDOC") issued the Level II response affirming the Level I respondent's decision, stating, in pertinent part:

> Your grievance appeal has been reviewed along with the response from Level I, and your original complaint that on 12/13/05 you sent medical a request to see the doctor regarding your left side. You state you injured it when you fell in your cell onto the toilet. You state you saw the nurse when this occurred and again on 12/22/05. You state at that time you were given medication for five days. You feel you have a fractured rib and would like to receive medication for your pain.
>
> Based on the information provided and upon further investigation, I concur with the Level I respondent and determine your grievance **unfounded**. According to your medical records, the nurse evaluated you on 12/22/05 for your complaints of rib pain. You were ordered Motrin for five days and instructed to sign up for sick call if your symptoms increased. You were evaluated on 1/2/06 for a rash, and did not voice any complaints of rib pain at that time. You were evaluated on 1/13/06 for complaints of your left side bothering you. You followed up with the doctor on 1/18/05 and treatment ordered. There is nothing to indicate you did not receive appropriate medical care for your complaints. There is no violation of policy/procedure regarding this issue. If you feel you require additional treatment before your scheduled follow-up, you are encouraged to submit a sick call request to discuss your concerns with the medical staff. No further action is necessary from this level.

Plaintiff was informed that Level II was the final level of appeal.[4] The instant complaint followed.

---

[4] Additionally, plaintiff's documentation of his attempts to exhaust all available administrative remedies indicates that, on December 13, 2005, a Disciplinary Offense Report ("Offense Report") was compiled, which indicated that plaintiff had communicated that "'if he became angry because he could not get his way (referring to a cell move) that he could cause harm to himself or others.'" He evidently uttered and wrote additional statements concerning what he "would do if he became angry and did not get his way." The Offense Report indicates that, because of these statements, plaintiff "was restrained and escorted to [the] SHU [Segregated (continued...)

3

## II. ANALYSIS

Plaintiff alleges that defendants failed to check his blood pressure and take his temperature before placing him, clad in nothing but his undershorts, in the strip cell. He states that the strip cell was hot and had insufficient ventilation, as demonstrated by a "window [that] didn't have a handle for to open the window for to get air." In plaintiff's view, these conditions, combined with his high blood pressure, caused him get "over heated," become "unable to breathe," and "to past [sic] out and fall on to the toilet on [his] left side"; plaintiff maintains that the fall could have been averted if defendants had checked his blood pressure and his temperature before placing him in the strip cell. Plaintiff further alleges that defendants failed to provide medical care for him and delayed in providing medical care to him.

Construing plaintiff's complaint liberally, he alleges that unconstitutional conditions of

---

[4](...continued)
Housing Unit]" and was charged, pursuant to Operating Procedure 861, with "[t]hreatening bodily harm to any person verbally, by gesture or actions or in writing."

Plaintiff has submitted additional documents. Plaintiff submitted an Informal Request Form, dated December 16, 2005, regarding the fall on December 13, 2005; the staff response, dated December 20, 2005, indicated that he should "let nursing know" should he "need medical attention." On December 21, 2005, plaintiff submitted an Informal Request Form concerning his fall, and on December 21, 2005, he was informed that he should "sign-up as needed at sick call. . . ." On January 18, 2006, plaintiff submitted an Informal Complaint Form, stating that he had seen the nurse on December 22, 2005, and that the nurse had given him medication to last 5 days. On January 19, 2006, he received the following staff response: "The doctor evaluated you yesterday and has ordered a chest x-ray and blood work. You have a followup scheduled in 1 month." On March 6, 2006, plaintiff submitted an Informal Request Form, stating that he had not had a follow-up as promised on February 6, 2006. Plaintiff received the following staff response: "You had your follow-up on 02/23/06." On March 7, 2006, plaintiff submitted an Informal Complaint Form, stating: "I would like to know is [sic] my frist [sic] x-ray showing I have a fractured rib[?]" On March 8, 2006, plaintiff received the following response: "Yes." On April 6, 2006, plaintiff submitted an Inmate Request for Information, requesting a copy of the x-ray report. Plaintiff was advised of the procedures for obtaining the report.

Plaintiff has submitted a copy of an x-ray report, dated January 25, 2006, which states that "[t]here is a left rib fracture of the left ninth rib" and that there was a "[l]eft ninth rib fracture seen laterally and nondisplaced." Pages from his medical record indicate that, on December 13, 2005, he was "placed on 15 min watch [in a] modified strip cell by psychology" and that there were "no injuries noted." On December 22, 2005, plaintiff was seen regarding "rib pain," was prescribed Motrin, and was advised to return to sick call as needed. Plaintiff has submitted additional pages of his medical records, all of which likewise accord with the Level I and Level II respondents' accounts of plaintiff's medical treatment history.

4

confinement at WRSP subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and that defendants were deliberately indifferent to his serious medical needs.

A.

## Prison Conditions

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Id. at 347. In order to state a claim of constitutional significance, a prisoner must satisfy both an objective and subjective component. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. Id. Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." Id. (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." Strickler, 989 F.2d at 1379. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Applying these principles to plaintiff's allegations, I conclude that plaintiff has failed to state a claim under the Eighth Amendment. There is no indication that the complained-of action of placing plaintiff in the strip cell – or of any other action on the part of prison officials – led to

plaintiff's rib injury, and placing plaintiff in a strip cell that was hot and stuffy and did not have windows that plaintiff could open clearly fails to state a claim.[5] See Strickler, 989 F.2d at 1380-1381; see also Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (stating that any injury incurred from vomiting and nausea which was not so severe as to require medical intervention or have lasting health effects, was de minimis). Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that an inmate failed to state a claim under the Eighth Amendment, since his complaints of breathing problems, chest pain, dizziness, sinus problems, headaches, and fatigue were "objectively speaking, relatively minor"); Oliver v. Deen, 77 F.3d 156, 158-159 (7th Cir. 1996) (holding that an inmate failed to demonstrate a serious medical need for purposes of the Eighth Amendment, where the inmate alleged that exposure to environmental tobacco smoke was causing nausea, wheezing, shortness of breath, and dizziness); Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (holding that the risk of harm by fire or smoke did not constitute cruel and unusual

---

[5] Even assuming arguendo that prison officials should check an inmate's blood pressure and temperature before placing the inmate in a strip cell, as plaintiff alleges, the circumstances here do not warrant such actions, because plaintiff's medical record, which he has submitted with his complaint, does not indicate that plaintiff had a high blood pressure problem that prison officials needed to be aware of. In fact, plaintiff's blood pressure on December 1, 2005, appears to have been 118/70, which is well within the "gold standard" optimal arterial pressure ranges as defined by the American Medical Association and the American Heart Association. See http://en.wikipedia.org/wiki/Blood_pressure. And, on January 13, 2006, plaintiff's blood pressure was recorded as 100/60, also well within the "gold standard" range. There are no high blood pressure readings in plaintiff's medical record; in fact, there are no concerns expressed at all concerning plaintiff's blood pressure. Thus, even if plaintiff could demonstrate the requisite "extreme" deprivation by producing "'evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from [his] unwilling exposure to the challenged conditions," Rish, 131 F.3d at 1096 (citation omitted), plaintiff's claim would nonetheless fail because there was no "objectively serious condition, medical need, or risk of harm" of which KMCC officials could "actually know of and disregard," i.e., there was no deliberate indifference, De'lonta, 330 F.3d at 634 (citation omitted).

Moreover, it is not within the court's jurisdiction to dictate the policies and procedures of prison management. Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). KMCC's actions in placing plaintiff in the strip cell was plainly done as much for his own protection as for the protection of others, and did not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

6

punishment) (citation omitted); Martin v. Arpaio, 2006 U.S. Dist. LEXIS 83330, at *10 (D. Ariz. Nov. 14, 2006) (holding that an inmate's allegation of cramping, diarrhea, and vomiting appeared to be de minimis); Hutchinson v. Civitella, 2003 U.S. Dist. LEXIS 15417, at *14-16 (S.D.N.Y. Sept. 4, 2003) (holding that none of the inmate's individual ailments were sufficiently serious for purposes of the Eighth Amendment where the inmate alleged that he was suffering from chest pain, nausea, the "inability to 'keep food down'"; rapid weight loss; and dizziness).

Accordingly, I find that plaintiff has failed to present any evidence which suggests defendants were deliberately indifferent to a substantial risk of serious harm, and dismiss these allegations pursuant to 28 U.S.C. § 1915A(b)(1).

### B.

### Medical Care

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly

7

authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff has not made any showing that a constitutional right has been violated. My review of plaintiff's own submissions, as recounted in the preceding factual summary, indicates that plaintiff was provided medical treatment on every occasion upon which he properly sought it and presented himself to receive it. His medical record and other submissions indicate that he received appropriate medical treatment for his fractured rib when he sought it, and that the fracture healed with no complications. Although plaintiff may believe that the institutional staff or medical staff failed to treat his medical needs by not providing him with medical care upon his filing of an informal complaint or request for information, his own submissions indicate that he was informed on each of those occasions of the proper procedure for obtaining medical care, which was simply to present himself to the nurse or at sick call. In other words, plaintiff's medical care was not denied, nor was it delayed.[6] To the extent plaintiff argues that defendants' actions were "lacking in care," plaintiff's claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983. See Estelle, supra, at 105-106.[7] Accordingly, I find that plaintiff has failed to state a claim under the Eighth Amendment for denial of medical care, and I dismiss these allegations pursuant to 28 U.S.C. § 1915A(b)(1).

---

[6] I also note that plaintiff's medical record refutes plaintiff's assertions concerning his blood pressure. See n. 5, supra.

[7] To the extent plaintiff believes any of his assertions state an actionable claim under state law, the court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over such a claim.

## III. CONCLUSION

Based on the foregoing, I find that plaintiff has not presented any claims on which relief can be granted. Therefore, I will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[8]

**ENTER**: This 3rd day of January, 2008.

*/s/ Jackson L. Kiser*
Senior United States District Judge

---

[8] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

9